IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MARCUS WALTON                                                                                            PLAINTIFF

v.                                                    Civil No. 6:20-cv-06033

DILLION R. VOSS, SERGEANT,
  OUACHITA RIVER UNIT, ET AL.                                                                DEFENDANTS

**REPORT AND RECOMMENDATION**

The Plaintiff, Marcus Walton, originally filed his *pro se* action on March 11, 2020, in the Eastern District of Arkansas pursuant to 42 U.S.C. § 1983. (ECF No. 1). On March 19, 2020, the matter was transferred to this Court. (ECF No. 3). On March 20, 2020, Plaintiff's application to proceed *in forma pauperis* was granted. (ECF No. 6). The remaining claims in this matter are contained in the Third Amended Complaint, as supplemented by Plaintiff's Motion to Supplement. (ECF No. 58, 61, 79).

Before the Court is Defendants' Motion for Summary Judgment (ECF No. 88) based on exhaustion, and the Plaintiff's response thereto. (ECF No. 95). Also before the Court are supplemental pleadings filed by the parties with respect to the pending Motion: Declaration of Gladys Evans (ECF No. 111) filed by the Defendants; Notice (ECF No. 113) filed by the Plaintiff; and Reply (ECF No. 114) filed by the Plaintiff.

The Motion is now ripe for decision. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

**I. FACTUAL BACKGROUND**

Plaintiff's first claim in his Third Amended Complaint is for "excessive force" and is stated against Defendants Dillion R. Voss, Ebony Harris, Shacoya Lewis, Tomisha Ivory, and Dillion

1

Jennings, in their individual capacity only. (ECF No. 58 at 5). Plaintiff lists the date of occurrence as "1-26-2020" and states: "Ebony Harris struck plaintiff 5 or 6 times in face for no reason while incoherent on ground, as well as Dillion Jennings and Shacoya Lewis struck plaintiff with state issued radio, Dillion R. Voss struck plaintiff with brass knuckle style cooper." (ECF No. 58 at 5).

Plaintiff's second claim is also for "excessive force" with respect to "1-26-2020." (ECF No. 58 at 6). The claim is stated against Defendants Dillion R. Voss, Ebony Harris, Shacoya Lewis, and Tomisha Ivory, in their personal capacity only. *Id*. Plaintiff states: "[h]ad two teeth knocked out, severe [sic] chronic migraine [sic] headaches from blows by all defendants to the head, and blunt force trauma to my back blood in urine and loss of hearing in left ear." (ECF No. 58 at 6).

Plaintiff's third claim is for "due process of law denial of medical" with the date of occurrence of "2-6-2020." (ECF No. 58 at 7). Plaintiff names Defendants Sedrick Franklin, Flora Washington, James Gipson, and Dale Reed, in their personal capacity only. *Id*. Plaintiff states he was "[d]enied my right to medical treatment and due process of law." *Id*. Plaintiff's third claim is supplemented by the information included in Plaintiff's pleading docketed as Motion to Supplement. (ECF No. 61). With respect to Sedrick Franklin, Plaintiff states: "procedural due process, denial of medical care. Defendant put in false reports that denied plaintiff right to a report hearing and denied him right to medical care which is a violation of amendment 8 also 14 . . . denied the plaintiff liberty without due process of law." (ECF No. 61 at 1). With respect to Flora Washington, Plaintiff states: "substantial due process, also procedural due process. Defendant placed plaintiff on involuntary treatment program which caused a . . . liberty denial and also signed papers for the plaintiff that he was unaware of to admit him for the treatment program. Also denied him the right to appear before the classification committee." (ECF No. 61 at 2). With respect to James Gipson, Plaintiff states: "procedural due process, substantial due process. Defendant is

2

liable for the due process violation by reason of his failure to correct them on administrative appeal in course of his supervisory responsibilities and affirmed the plaintiff's placement and conviction." (ECF No. 61 at 2). With respect to Dale Reed, Plaintiff states: "procedural due process, substantial due process. Defendant is liable for due process violation by reason of his failure to correct them on administration appeal in course of his supervisory responsibilities and affirmed the plaintiff's placement and conviction." (ECF No. 61 at 2).

Plaintiff seeks both compensatory and punitive damages as relief for his claims. Specifically, Plaintiff seeks "350,000 in compensatory damages . . . 200.00 a day . . . pain and suffering for my depression mental stability being away from my children." (ECF No. 58 at 8).

In the instant Motion, the Defendants argue that they are entitled to summary judgment because Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

The Plaintiff denies that the Defendants are entitled to summary judgment.

Defendants' Motion for Summary Judgment attaches several exhibits: (1) Declaration of Terri Grigsby Brown (ECF No. 88-1); (2) Arkansas Department of Correction Administrative Directive concerning Grievance Procedure for Offenders (ECF No. 88-2); (3) Plaintiff's Inmate Grievances and associated documents (ECF No. 88-3); (4) Declaration of Sgt. Sedrick Franklin (ECF No. 88-4); and (5) Arkansas Department of Correction Administrative Directive concerning Disciplinary Rules and Regulations (ECF No. 88-5).

Plaintiff has responded to the Defendants' Motion, attaching his Declaration as support. (ECF No. 95).

After reviewing the summary judgment pleadings submitted, I find the following material facts not in dispute:

3

Plaintiff Marcus Walton in an inmate with the Arkansas Department of Corrections[1] ("ADC") currently housed at Varner SuperMax.

Terri Grigsby Brown is the Inmate Grievance Supervisor at the ADC. Her job responsibilities include responding to non-medical inmate grievance appeals for the current and former ADC Chief Deputy Directors and Assistant-Directors. (ECF No. 88-1).

The ADC has an inmate grievance policy. At all times relevant to this lawsuit, Administrative Directive 19-34 was the governing ADC Inmate Grievance Policy. (ECF No. 88-1). The effective date of Administrative Directive 19-34 was 12/2/2019. (ECF No. 88-2 at 1).

Administrative Directive 19-34 states: "A summary of the Inmate Grievance Procedure will be included in the Inmate Handbook. However, the Inmate Grievance procedure is governed by this Administrative Directive and not any summary in the Inmate Handbook. All inmates shall be provided access to this Administrative Directive." (ECF No. 88-2 at 4).

The ADC's grievance policy informs inmates that they must specifically name each individual involved and fully exhaust their grievance prior to filing a lawsuit. (ECF No. 88-1, 88-2).

The ADC's grievance policy also informs the inmates that only one problem/issue should be stated in their grievance, not multiple problems/issues. The inmates are instructed that they must use a separate form for each issue. (ECF No. 88-1, 88-2).

The ADC's grievance policy warns the inmates that only one issue will be addressed in their grievance and that additional problems/issues contained in the grievance will not be considered as exhausted. (ECF No. 88-1, 88-2).

The ADC inmate grievance policy further instructs inmates that when submitting a

---

[1] The Arkansas Department of Correction was reorganized in 2019 to become the Arkansas Department of Corrections. The new Department is a Cabinet level department within the Arkansas State Government which includes the Division of Correction and the Division of Community Correction.

grievance; the grievant must "write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (ECF No. 88-1, 88-2).

Pursuant to the inmate grievance policy, in order to timely file a grievance, an inmate is required to fully comply with all other provisions of the ADC inmate grievance policy in order to fully exhaust administrative remedies as required by the Prison Litigation Reform Act. (ECF No. 88-1, 88-2).

The ADC's inmate grievance procedure is a three-step process. (ECF No. 88-1, 88-2).

Step One, the Informal Resolution Procedure, requires inmates to first seek an informal resolution by submitting a unit level grievance form within fifteen days of the alleged incident to the designated problem solver. Depending on the inmate's particular issue, the designated problem-solver will either meet with the inmate within three working days to resolve the issue; meet with the inmate immediately if the issue is an emergency; refer the issue to the Health Services Administrator; or refer the issue to the Mental Health Supervisor. (ECF No. 88-1, 88-2).

The ADC inmate grievance policy instructs inmates that if the designated problem-solver fails to contact the inmate and attempt resolution of the complaint or fails to return Step One within the three designated working days, the inmate may proceed to Step Two. When this occurs, the Step Two, formal grievance, must be filed no later than six working days from the submission of the Unit Level Grievance Form, pursuant to Step One. (ECF No. 88-1, 88-2).

Due to excessive submissions causing a delay in processing inmate grievances, inmates are limited to five Step One, Informal Resolutions per seven-day period. Only the first five Step One, Informal Resolutions will require a response. Each seven-day period begins on Saturday and ends on Friday. (ECF No. 88-1, 88-2).

After attempting to resolve their issue through Step One, the inmate may proceed to Step

Two, the Formal Grievance Procedure, by filing a formal grievance on the same unit level grievance form used during Step One. (ECF No. 88-1, 88-2).

Inmates are allowed to submit three Step Two, formal grievances during a seven-day period. A new seven day period begins each Saturday and ends on the following Friday. Only the first three formal grievances submitted by an inmate require an investigation and response. This limit includes nonmedical, medical, and mental health grievances. (ECF No. 88-1, 88-2).

Formal grievances that are filed after an inmate reaches the limit are logged and reviewed to determine if an emergency exists. If no emergency exists, the grievance will be logged out on the same day it was received and it shall be written on the Unit Level Grievance Form "No action necessary-exceeds weekly limit," dated, and signed. The original grievance is then placed in the grievance file and no other response will be given to the inmate. (ECF No. 88-1, 88-2).

The inmate will receive a response to the formal grievance from the warden or warden's designee within twenty working days. (ECF No. 88-1, 88-2).

If the inmate is not satisfied with the warden's response, the inmate may file an appeal within five days to the Chief Deputy/Deputy/Assistant Director. (ECF No. 88-1, 88-2).

If the warden fails to respond to the Step Two within twenty days, the inmate may proceed with an appeal. (ECF No. 88-1, 88-2).

An inmate's appeal must be written in the space provided on the original Warden/Center Supervisor's Form, the Health Services Response to the Unit Level Grievance Form for medical or mental health grievances entitled Inmate's Appeal or the Acknowledgement or Rejection of Unit Level Grievance Form. (ECF No. 88-1, 88-2).

The ADC inmate grievance policy informs the inmates that only what is written in the space provided for appeal will be considered part of the grievance appeal and that additional sheets should not be attached and will be returned to the inmate upon receipt of the appeal or as soon as

practical. (ECF No. 88-1, 88-2).

The inmate must include the original Unit Level Grievance Form and either the Warden's Decision Form or the Acknowledgement or Rejection of the Unit Level Grievance with his appeal. If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the inmate as rejected. (ECF No. 88-1, 88-2).

The entire grievance procedure should be complete within seventy-six working days unless an extension has been executed or unforeseen circumstances have occurred. (ECF No. 88-1, 88-2).

The ADC grievance policy instructs inmates that if, at any level of the inmate grievance process, the inmate fails to receive a response to his grievance within the allotted timeframe the inmate may proceed to the next level of the process. (ECF No. 88-1, 88-2).

The ADC grievance policy explicitly informs inmates that they must exhaust their administrative remedies as to all defendants at all levels of the grievance process before filing a Section 1983 lawsuit or their lawsuit or claims may be dismissed immediately pursuant to the exhaustion requirements of the Prison Litigation Reform Act. (ECF No. 88-1, 88-2).

To fully exhaust administrative remedies, inmates are required to timely file an informal resolution and formal grievance at the unit level; a grievance appeal should be filed to the Assistant and/or Deputy Director's level as detailed in the ADC inmate grievance policy. (ECF No. 88-1, 88-2).

Ms. Brown reviewed Plaintiff's grievance appeal file and grievance history. During her review, she searched for any exhausted grievances filed from January 2020, through the date of her affidavit, pertaining to Plaintiff's claims in the present lawsuit. (ECF No. 88-1).

Upon review, Ms. Brown found that Walton filed the following grievances: VSM20-00653, SNN20-00033, SNN20-00038, SN20-00039, SNN20-00062, VU-20-00304, and SNN20-

00063.  (ECF No. 88-1).

None of the grievances mention Ebony Harris, Dillion Jennings, James Gibson, Dale Reed, or Tomisha Ivory.  (ECF No. 88-1).

Plaintiff named Defendant Dillon Voss in Grievance No. SNN20-00033 on January 31, 2020, regarding a complaint of excessive force.  Only Voss was named in the grievance.  On appeal of the denial of the grievance, Plaintiff failed to include Attachment 1, the Unit Level Grievance Form.  So, the grievance appeal was rejected. (ECF No. 88-1, 88-3).

In Grievance No. SNN20-00038, Plaintiff claimed excessive force against Voss and Defendant Shakoyia Lewis.  Plaintiff failed to send Attachment 1, the Unit Level Grievance Form, with his appeal and, thus, it was rejected.  (ECF No. 88-1, 88-3).

In Grievance No. SNN20-00063, Inmate Walton attempted to claim force again against Voss and Shakoyia Lewis.  The grievance was deemed untimely submitted and was rejected for that reason.  (ECF No. 88-1).

Plaintiff claimed a denial of medical treatment in Grievance No. SNN20-00039.  However, he failed to name any staff that allegedly denied him medical treatment.  Plaintiff also failed to include Attachment 1, the Unit Level Grievance Form.  Therefore, Brown concludes Plaintiff did not properly and fully exhaust this claim against any staff in that grievance.  (ECF No. 88-1, 88-3).

In Grievance No. SNN20-00062, Plaintiff claimed excessive force again against Voss, also relating to an altercation Plaintiff had with staff on or about January 27, 2020.  The Grievance was submitted on February 10, 2020, and was rejected as being untimely and because it was a non-grievable disciplinary matter.  Plaintiff only named Voss in the grievance, and did not "specifically name" any additional staff.  Furthermore, Plaintiff failed to exhaust the disciplinary matter because he waived his appearance and, consequently, his appeal was rejected.  (ECF No. 88-4, 88-5, 88-3)

8

Brown concludes that Plaintiff failed to properly and fully exhaust his grievance and his disciplinary conviction. (ECF No. 88-1).

Plaintiff submitted Grievance No. VSM20-00653 regarding his classification at Varner Supermax against Floria Washington. However, Plaintiff never claimed a denial of medical care against Washington in that grievance, which is the only claim he makes against her in the Third Amended Complaint. (ECF No. 58). Brown concludes Plaintiff failed to fully and properly exhaust any grievance against Washington relating to a claim made in this lawsuit. (ECF No. 88-1).

Plaintiff submitted Grievance No. VU-20-00304, wherein he complained about his waiver of appearance at his disciplinary hearing for the incident that occurred on January 27, 2020. Plaintiff names Defendant Franklin in the grievance. However, the grievance was submitted in May and was denied as untimely and that finding was upheld on appeal. Therefore, Plaintiff failed to fully and properly exhaust any grievance against Franklin relating to any claim made in this lawsuit. (ECF No. 88-1, 88-3).

In Plaintiff's response to Defendants' Motion, he argues that he was given out of date rules and did not have access to the current Inmate Grievance Procedure set forth in Administrative Directive 19-34. (ECF No. 95).

On March 2, 2021, the Court entered a text only Order directing Defendants to supplement their Motion with an affidavit from an individual with knowledge concerning how the Inmate Grievance Procedure, AD 19-34, was communicated to inmates entering ADC custody in January 2020. (ECF No. 110).

Defendants filed the Declaration of Gladys Evans on March 4, 2021. (ECF No. 111). The Declaration states that Evans is the Varner Supermax Unit Law Library Supervisor. Evans' duties include supervision library clerks, handling copies, typing and law library requests, managing

orientation for all new commitments and sponsor of Inmate Council. *Id.* Evans further states that the Plaintiff, Marcus Walton, is an inmate currently housed at the Varner Supermax. *Id.*

Evans states, "[w]hen Varner Unit receives new commitments, those inmates are given an orientation within 24 hours of arrival. Inmates are also provided an Inmate Handbook/Orientation Package, which outlines the Unit's procedures, rules and regulation. This packet of information includes the grievance policy form [from] the Unit Law Library." (ECF No. 111).

Evans further states, "[t]his process does not include inmates who are transferred from other units who are not new commitments. Although they do not receive a *new* orientation, they can still access the grievance policy via the Law Library." *Id.* (ECF No. 111).

In Plaintiff's response to the Declaration of Gladys Evans, he states "plaintiff was not a new commit I was transferred and receive no law library assistance for 5 months . . . So there was no way plaintiff could access full grievance procedure." (ECF No. 113).

Plaintiff further states: "I was denied my right to access law library until September, 2020." (ECF No. 114). Plaintiff states: "I receive no policys or procedure in discovery efforts I had to basically order those in other inmates names to receive them. The first time I knew the 19-34 grievance procedure existed was when their attorney sent it in to the Courts." (ECF No. 114). Plaintiff attaches an exhibit to his pleading noting that he was transferred to Varner from Ouachita Correction on "2-3-3030." (ECF No. 114, Ex. A).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the

non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* A prisoner's remedies are exhausted "when [the] inmate pursues the prison

11

grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

Defendants argue that Plaintiff's claims have not been fully exhausted. The specifics of Defendants arguments vary with respect to each claim and each Defendant. With respect to some claims, Defendants argue that Plaintiff did not properly name certain Defendants in a grievance; with respect to other claims, Defendants argue that Plaintiff's grievances were untimely or did not include the correct forms. It is undisputed that ADC Administrative Directive 19-34 was the governing ADC Inmate Grievance Procedure at the time. (ECF No. 88-1). The effective date of Administrative Directive 19-34 was 12/2/2019. *Id*.

Plaintiff's claims concern occurrences which happened on January 26, 2020, and February 6, 2020, soon after Plaintiff entered ADC custody. (ECF No. 58). At that time, Plaintiff was confined at Ouachita River Unit ("ORU") of the ADC. *Id*. In response to Defendants' arguments that Plaintiff failed to exhaust his administrative remedies, Plaintiff contends that he did not have access to Administrative Directive 19-34 at the relevant time. (ECF No. 95, 114). Plaintiff was transferred from the ORU to Varner on February 3, 2020. (ECF No. 114). Again, Plaintiff claims he did not have access to Administrative Directive 19-34 when transferred to Varner. *Id*. Although Plaintiff states that he was given a Varner handbook at some point, Plaintiff contends the handbook

12

was outdated and did not contain the full grievance policy.[2] (ECF No. 95 at 2). Plaintiff further claims that he did not have access to the law library until September of 2020. (ECF No 114).

Defendants were directed by the Court to supplement their summary judgment pleadings "with an affidavit from an individual with knowledge concerning how the Inmate Grievance Procedure, AD 19-34, was communicated to inmates entering ADC custody in January 2020." (ECF No. 110). Defendants filed a Notice entitled "Declaration of Gladys Evans." (ECF No. 111). The Declaration speaks to information given when "Varner unit receives new commitments." (ECF No. 111). The Declaration further states "[t]his process does not include inmates who are transferred from other units who are not new commitments." *Id*. Stating further, "[a]lthough they do not receive a *new* orientation, they can still access the grievance procedure via the Law Library." *Id*. Although the Declaration does state that Gladys Evans is aware that Plaintiff "is an inmate currently housed at Varner Supermax," the Declaration does not lay out how, when or if Plaintiff actually received knowledge of Administrative Directive 19-34 or the full Inmate Grievance Procedure. (ECF No. 111).

As set forth above, exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). However, the PLRA only requires exhaustion of "such administrative remedies as are available." 42 U.S.C. § 1997e(a).

> The availability of a remedy, according to the Supreme Court, is about more than just whether an administrative procedure is 'on the books.' *Ross v. Blake*, 136 S.Ct. 1850 (2016). An administrative remedy is 'not capable of use,' and therefore unavailable, for example, 'when prison administrators thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation.' *Id.* at 1859-60.

*Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

---

[2] According to Administrative Directive 19-34, although the Inmate Grievance Procedure is summarized in the Inmate Handbook, the "Administrative Directive and not any summary in the Inmate Handbook" controls. (ECF No. 88-2 at 4).

Failure to exhaust is an affirmative defense that must be proven by the Defendants. *Porter v. Sturm*, 781 F3d 448, 451 (8th Cir. 2015)(citing *Jones*, 549 U.S. at 211-12). Further, the Defendants' burden includes showing that the administrative remedies were actually available to the Plaintiff. *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001).

Despite being directed by the Court to "supplement their Motion for Summary Judgment with an affidavit from an individual with knowledge concerning how the Inmate Grievance Procedure, AD 19-34, was communicated to inmates entering ADC custody in January 2020," Defendants failed to show how the Plaintiff was informed of the ADC inmate grievance procedure. Accordingly, on the record before the Court, there remain genuine issues of material fact as to whether Plaintiff had access to or knowledge of the requirements of the ADC inmate grievance procedure in place when was committed to its custody. These genuine issues of material fact prevent summary judgment based on exhaustion.

## IV. CONCLUSION

For the reasons stated above, I recommend that Defendants' Motion for Summary Judgment (ECF No. 88) be **denied**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of April 2021.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE