IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MARCUS WALTON                                                    PLAINTIFF

v.                              Civil No. 6:20-cv-06033

DILLION R. VOSS, SERGEANT,
OUACHITA RIVER UNIT, ET AL.                                DEFENDANTS

## REPORT AND RECOMMENDATION

The Plaintiff, Marcus Walton, originally filed his *pro se* action on March 11, 2020, in the Eastern District of Arkansas pursuant to 42 U.S.C. § 1983.  (ECF No. 1).  On March 19, 2020, the matter was transferred to this Court.  (ECF No. 3).  On March 20, 2020, Plaintiff's application to proceed *in forma pauperis* was granted.  (ECF No. 6).

Before the Court are the parties' opposing motions for summary judgment:  Plaintiff's Motion for Summary Judgment (ECF No. 142); and Defendants' Motion for Summary Judgment (ECF No. 147).  The Court has considered the motions, and the responses and replies thereto, and they are ripe for decision.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

## I. FACTUAL BACKGROUND

This matter has already been before the Court at the summary judgment stage on the issue of exhaustion.  Following those summary judgment proceedings, Plaintiff's claims against Defendants Ebony Harris, Dillion Jennings, James Gibson, Dale Reed and Tomisha Ivory were dismissed.  (ECF No. 134).  The remaining claims in this matter, against Defendants Dillon Voss, Shakoyia Lewis, Sedrick Franklin, and Flora Washington, are contained in the Third Amended Complaint, as supplemented by Plaintiff's Motion to Supplement.  (ECF No. 58, 61, 79).

1

Plaintiff's first claim in his Third Amended Complaint is for "excessive force" and is stated against remaining Defendants Voss and Lewis, in their personal capacity only.  (ECF No. 58 at 5).  Plaintiff lists the date of occurrence as "1-26-2020" and states:  "Ebony Harris struck plaintiff 5 or 6 times in face for no reason while incoherent on ground, as well as Dillion Jennings and Shacoya Lewis struck plaintiff with state issued radio, Dillion R. Voss struck plaintiff with brass knuckle style cooper."  (ECF No. 58 at 5).

Plaintiff's second claim is also for "excessive force" with respect to "1-26-2020."  (ECF No. 58 at 6).  The remaining claim is stated against Defendants Voss and Lewis, in their personal capacity only.  *Id*.  Plaintiff states:  "[h]ad two teeth knocked out, severe [sic] chronic migraine [sic] headaches from blows by all defendants to the head, and blunt force trauma to my back blood in urine and loss of hearing in left ear."  (ECF No. 58 at 6).

Plaintiff's third claim is for "due process of law denial of medical" with the date of occurrence of "2-6-2020."  (ECF No. 58 at 7).  Plaintiff names remaining Defendants Franklin and Washington, in their personal capacity only.  *Id*.  Plaintiff states he was "[d]enied my right to medical treatment and due process of law."  *Id*.  Plaintiff's third claim is supplemented by the information included in Plaintiff's pleading docketed as Motion to Supplement.  (ECF No. 61).  With respect to Defendant Franklin, Plaintiff states:  "procedural due process, denial of medical care.  Defendant put in false reports that denied plaintiff right to a report hearing and denied him right to medical care which is a violation of amendment 8 also 14 . . . denied the plaintiff liberty without due process of law."  (ECF No. 61 at 1).  With respect to Defendant Washington, Plaintiff states:  "substantial due process, also procedural due process.  Defendant placed plaintiff on involuntary treatment program which caused a . . . liberty denial and also signed papers for the plaintiff that he was unaware of to admit him for the treatment program.  Also denied him the right to appear before the classification committee."  (ECF No. 61 at 2).

Plaintiff seeks both compensatory and punitive damages as relief for his claims. Specifically, Plaintiff seeks "350,000 in compensatory damages . . . 200.00 a day . . . pain and suffering for my depression mental stability being away from my children." (ECF No. 58 at 8).

The following is a summation of the facts established for purposes of this summary judgment proceeding:

Plaintiff Marcus Walton (hereinafter "Walton") is an inmate with the Arkansas Department of Corrections[1] ("ADC"). Walton was formerly housed at the Ouachita Regional Correctional Unit (ORU), and is currently housed at Varner SuperMax.

Defendants Voss and Lewis are former correctional officers for the ADC.

On January 27, 2020, Voss was assigned to the ORU. Both the Declaration of Dillon Voss and the narrative by Voss contained in Walton's Disciplinary Violation, attached as an exhibit to Voss's Declaration, detail Voss's interactions with Walton on January 27, 2020. (ECF No. 147-1 at 1; 4).

At approximately 10:30 a.m. on January 27, 2020, Walton was inside of Chow Hall 4, Zone 4, monitoring intake chow. (ECF No. 147-1 at 1; 4). Voss further testifies that he gave Walton a direct order to be quiet, which Walton disobeyed. (ECF No. 147-1 at 4). Voss then ordered Walton out of the Chow Hall. (ECF No. 147-1 at 1; 4).

Voss testifies that as Walton exited the Chow Hall, he began speaking to Voss in a profane and aggressive manner. (ECF No. 147-1 at 2; 4). Voss testifies Walton verbally advised Voss he was refusing to return to the barracks. *Id*. Voss testifies that Walton was combative and aggressive in his refusal. *Id*. Voss testified that he therefore directed Walton to submit to hand restraints. *Id*. Voss testifies Walton responded, "I'm not submitting to shit-fuck that . . . ." *Id*.

---

[1] The Arkansas Department of Correction was reorganized in 2019 to become the Arkansas Department of Corrections. The new Department is a Cabinet level department within the Arkansas State Government which includes the Division of Correction and the Division of Community Correction.

Voss testifies that he then attempted to place hand restraints on Walton, but Walton pulled away in an aggressive manner.  (ECF No. 147-1 at 2; 4).  An aggressive incident, that was captured on video, then ensued.  (ECF No. 147-2).  Voss testifies that he struck Walton with a closed fist to attempt to gain his compliance and get control of the situation.  (ECF No. 147-1 at 2; 4).  Voss testifies that he used only the amount of force necessary to regain control of Walton and to attempt to restrain him.  (ECF No. 147-1 at 2).  Voss testifies that he did not strike Walton with hand restraints.  *Id*.  Although he was holding the hand restraints, Voss testifies that he had his fist completely around them where no portion of the hand restraints struck Walton.  (ECF No. 147-1 at 2).

Voss testifies that Walton then struck him back with a closed fist.  (ECF No. 147-1 at 3; 4).  Voss testifies that this caused him to suffer a fractured eye socket.  In addition, since the incident, Voss has developed a cataract on his eye due to a scratch caused by Walton's strike.  (ECF No. 147-1 at 3).

Voss testifies that he and Walton went to the ground, and that Walton was on top of him at that time until additional staff arrived and restrained Walton.  (ECF No. 147-1 at 3; 4).  Voss testifies that while on the ground, Walton continued to struggle and refused to stop his aggression.  (ECF No. 147-1 at 3).

Lewis was also involved in the incident with Walton on January 27, 2020.  (ECF No. 147-3).  In the Declaration of Shakoyia Lewis, she testifies that she documented her account of what occurred in an incident report.  (ECF No. 147-3 at 1; 3).

Lewis testifies "[a]t no time did I strike Inmate Walton with a radio as he has alleged." (ECF No. 147-3 at 1).  Lewis further testifies:  "[t]hat only the force necessary to regain control of Inmate Walton and gain his compliance was used in the incident."  (ECF No. 147-3 at 1).

Lewis's incident report notes aggressive profanity against her, and notes multiple refusals

4

by Walton to comply with verbal, direct orders.  (ECF No. 147-3 at 3).  Lewis's incident report also states that Voss gave Walton "a loud, verbal, direct order to accept hand restraints."  (ECF No. 137-3 at 3).  Lewis's incident report notes that Walton refused the order to accept hand restraints and jerked away in an aggressive manner.  *Id*.  Lewis notes that Voss then took Walton to the ground and that she "then gave Inmate Walton several direct orders to release both of his arms and accept hand restraints.  Inmate Walton refused."  *Id*.  Lewis's incident report states that she then struck Walton "in his right side and right side of head."  *Id*.  Lewis notes that "Walton was then placed in hand restraints and escort to day clinic for medical treatment.  Company nurse was contacted."  *Id.*

The January 27, 2020, incident at issue is captured on a video.  (ECF No. 147-2).  The video shows the following events:

a.  Time Stamp 10:30:41 – Voss escorts Walton out of Chow Hall;

b.  Time Stamp 10:30:55 – Another officer is present and Walton, after exiting Chow Hall with Voss, begins to argue and flails his arms.

c.  Time Stamp 10:31:14 – Multiple officers are present and appear to be attempting to gain Walton's compliance and are speaking with Walton.  Walton continues to argue;

d.  Time Stamp 10:31:31 – Five officers are present.  Walton continues to argue;

e.  Time Stamp 10:32:11 – Officers attempt to place hand restraints on Walton and he aggressively pulls away and resists;

f.  Time Stamp 10:32:15 – Walton and Officers engage in a physical altercation.  Walton is fighting and refusing to be restrained;

g.  Time Stamp 10:32:16 – Voss appears to strike Walton;   Walton continues to fight and struggle;

h.  Time Stamp 10:32:41 – At this time it appears a number of officers have gained control

of Walton on the floor;

i.  Time Stamp 10:33:55 – Walton is escorted in restraints out of the hallway.

Later on the day of the incident, pictures were taken of various staff involved in the incident with Walton.  Pictures were also taken of Walton.  (ECF No. 147-1 at 12-20).  The pictures show injuries to Voss's head, neck, and right eye.  (ECF No. 147-1 at 12).  The pictures show injuries to Harris's lip, right forearm, and left elbow.  (ECF No. 147-1 at 13-14).  The pictures show injuries to Lewis's right hand.  (ECF No. 147-1 at 15).  The pictures do not clearly show any injuries to Walton.  (ECF No. 147-1 at 18-20).

According to ADC Use of Force Administrative Directive 17-06, Section IV-A(3)("Protecting individuals"), "Employees may use force to protect themselves or any person from reasonably foreseeable injury by an inmate or others in the performance of their official duties."

ADC Use of Force Administrative Directive 17-06, Section IV-A(5)("Compelling compliance with orders") provides, "In ordinary day to day correctional situations, employees may use non-deadly force to compel an inmate to comply with lawful orders when other methods of persuasion are not effective and noncompliance jeopardizes safety and security of the institution." (ECF No. 147-1 at 6).

Flora Washington  was the Classification Officer with the Arkansas Department of Corrections, assigned to the Varner Unit, in February of 2020.  (ECF No. 147-4 at 1).

According to the Declaration of Flora Washington, on February 6, 2020, Walton was found guilty of the disciplinary violation of Battery – use of force on staff.  (ECF No. 147-4 at 1).

Walton appeared before the Classification Committee on February 19, 2020, due to being found guilty on the disciplinary violation of Battery – use of force on staff.  (ECF No. 147-4 at 1).  At that time Walton raised his objections to being placed on an 18-month program at Varner.  *Id*.

After hearing Walton's objections, the Classification Committee recommended Walton for an 18-month program at Varner due to being found guilty on the disciplinary violation of Battery – use of force on staff.  (ECF No. 147-4 at 2).  The Chief Deputy Director then approved the 18-month program.  *Id*. at 2.

Sgt. Sedrick Franklin is a Sergeant with the ADC and is assigned to the Varner Unit.  (ECF No. 147-6 at 1).  Franklin was assigned to the Varner Unit in February of 2020.  *Id.*

According to the Declaration of Franklin, on February 4, 2020, at 8:22 a.m., Walton was notified by staff that he had a disciplinary hearing set for February 5, 2020, at 8:30 a.m.  (ECF No. 147-6 at 1).  Franklin testifies that "[a]s a result, Mr. Walton was given over 24 hours' notice of his hearing."  *Id*.  This disciplinary hearing was not concerning the January 27, 2020 altercation; but, instead, concerned an incident on January 26, 2020.  (ECF No. 147-6 at 1, 4-6).  Walton appeared at the February 5 hearing, pled not guilty, and responded to the disciplinary charge.  *Id*. Walton was found guilty on the charges against him.  *Id.*

Franklin also testifies that Walton was notified later on February 4, 2020, of another disciplinary hearing scheduled on a separate charge – the charge stemming from the January 27, 2020, altercation – on February 6, 2020.  (ECF No. 147-6 at 1, 7-9).  Based on Walton's notification of the hearing scheduled for February 6, he was given over 24 hours' notice.  *Id*.

Franklin testifies that on the morning of February 6, 2020, Walton was being seen in the infirmary when Franklin went to retrieve him for the disciplinary hearing concerning the January 27, 2020, altercation.  (ECF No. 147-6 at 2).  Franklin testifies that Walton became disruptive and advised him that he was not going to the disciplinary hearing.  *Id*.  Franklin testifies that he told Walton that he could return to the infirmary after the hearing, but that he refused to go to the hearing.  *Id.*  Franklin testifies that because Walton refused to leave the infirmary and attend disciplinary court, he left Walton at the infirmary and did not escort Walton to Administrative

7

Segregation following his presence in the infirmary.  *Id*.

Franklin testifies that as a result of Walton's refusal to leave the infirmary and go to the hearing, pursuant ADC policy, Walton waived his ability to appear in disciplinary court on February 6, 2020.  (ECF No. 147-6 at 2, 10-48).

Franklin testifies that he does not provide medical care for inmates; and, that Walton never made a request to him or through him for medical care at any time.  (ECF No. 147-6 at 2).

ADC Inmate Disciplinary Manual Administrative Directive 18-34, Section 18-34 VII(E)(4),

> Upon convening to consider cases of inmate violations of rules and regulations, the Major Disciplinary Court shall cause the inmate to appear before it unless the inmate waives in writing or through behavior.  In the event that an inmate wishes to waive his/her appearance, a waiver form will be completed and a copy provided to the charged inmate and must be reviewed by the Warden/Center Supervisor or designee.  If the inmate waives his/her right to appear and is found guilty, he/she cannot appeal the decision.

(ECF No. 147-6 at 22).

Walton was found guilty of the disciplinary charge stemming from the January 27, 2020, altercation.  (ECF No. 147-6 at 7-9).

According to Walton's deposition testimony, during the incident in question, Voss asked him to be quiet in the chow hall and then, when he continued talking, asked him to "exit the chow hall."  (ECF No. 147-5 at 3).  Walton states that after Voss asked him to go back to his barracks, "I said I'm not your child,  you can't make me do anything."  *Id*.  Walton states that although the video shows "me moving out of [Voss's] grasp," he contends that neither Voss, nor anyone else, ever attempted to put him in handcuffs.  (ECF No. 147-5 at 4).

Walton testifies in his deposition that 24 – 48 hours after the incident he was taken to the infirmary.  He testifies that by the time he was taken to the infirmary "my lumps on my forehead had went down, and my ear had stopped bleeding."  (ECF No. 147-5 at 5).

Walton testifies in his deposition that he had two teeth "knocked out by Dillon R. Voss when he punched me in the mouth." (ECF No. 147-5 at 5). He further testifies that it was "[t]he teeth that was extracted after only three months, after I had to wait three months for the extraction." *Id*.

Walton testifies that the video shows that Lewis hit him with her radio. (ECF No. 147-5 at 6). Walton further testifies that the video shows that Voss used handcuffs as brass knuckles. *Id*. Walton testifies that the video shows both Lewis and Voss "repeatedly hitting me while I lay on the ground unconscious." *Id*.

Walton testifies in his deposition that Franklin "lied about the time I was in the infirmary, he lied about the time that I was supposed to go to my hearing. He lied about me being disruptive." (ECF No. 147-5 at 7). Further, in Walton's Declaration to Support his motion for summary judgment, Walton states "Franklin put in false reports of me being disruptive and me waving my disciplinary hearing, signing my waver at 8:30 when I didn't come into contact with him until 9:15 a.m." (ECF No. 142 at 1).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

### A.  Defendants Voss and Lewis -- Excessive Force

As set forth above, Plaintiff's first two claims are stated against Defendants Voss and Lewis and are based on allegations of excessive force during an incident which occurred on January 26, 2020.

"When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to

10

maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013)(*quoting Hudson v. McMilliam*, 503 U.S. 1, 6-7 (1992)). "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008).   "[E]very malicious push or shove does not amount to a deprivation of constitutional rights." *Hickey v. Reeder,* 12 F.3d 754, 757 (8th Cir. 1993). "[U]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Johnson v. Bi-State J. Ctr./Arkansas Dept. of Corrections*, 12 F.3d 133, 136 (8th Cir. 1993).

The Court must consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, the threat to the safety of the staff and inmates, and any attempt to temper the severity of the response.   *Whitley v. Albers*, 475 U.S. 312, 321 (1986).  In *Wilkins v. Gaddy*, 590 U.S. 34 (2010), the Supreme Court held that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim." *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010).

The video of the January 27, 2020, incident shows a lengthy verbal disagreement between the Plaintiff and Voss.  The video shows that the Plaintiff appeared agitated and animated and that the disagreement eventually attracted several other prison staff.  The video appears to show that the officers attempted to restrain Plaintiff with handcuffs and that Plaintiff physically pulled away from Voss.  Following Plaintiff's active resistance, a physical altercation began and Plaintiff was

hit in the face by Voss.  The video further shows that Plaintiff continued to aggressively struggle with the Defendants and other staff until the officers gained control of him on the floor.  Although Plaintiff contends that he was hit directly with handcuffs and a radio, Defendants dispute this allegation and the video does not clearly show Plaintiff being hit with these items and certainly does not show these items being used as weapons.  Control of Plaintiff was accomplished fairly quickly – within less than two minutes – and although Plaintiff did suffer injuries, his injuries were not extreme.  Defendants suffered similar – or even more extensive – injuries.

The Eighth Circuit has repeatedly emphasized that "institutional security is the most compelling legitimate government interest in a prison setting." *Simpson v. County of Cape Girardeau, Missouri*, 879 F.3d 273, 281 (8th Cir. 2018) (internal quotation omitted).  The Eighth Circuit has recognized that "summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy." *Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir. 2000).  Further, "[t]he infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

From the undisputed facts, it does not appear that the force used to restrain Plaintiff was applied "maliciously and sadistically."  Although Plaintiff suffered injuries in the take-down, the use of force was necessary and applied in a good faith effort to restore discipline.  Accordingly, there is no genuine issue of material fact regarding Plaintiff's allegations of excessive force, and Defendants are entitled to summary judgment on those claims.

### B.  Defendants Franklin and Washington

Plaintiff's third claim is stated against Defendants Franklin and Washington.  Plaintiff states that he was "[d]enied my right to medical treatment and due process of law." (ECF No. 58). For his claim against Franklin, Plaintiff states:  "procedural due process, denial of medical care. Defendant put in false reports that denied plaintiff right to a report hearing and denied him right to medical care which is a violation of amendment 8 also 14 . . . denied the plaintiff liberty without due process of law."  (ECF No. 61 at 1).  With respect to Washington, Plaintiff states:  "substantial due process, also procedural due process.  Defendant placed plaintiff on involuntary treatment program which caused a . . . liberty denial and also signed papers for the plaintiff that he was unaware of to admit him for the treatment program.  Also denied him the right to appear before the classification committee."  (ECF No. 61 at 2).   Plaintiff's claims will be discussed in two sections:  due process with respect to his disciplinary hearing/treatment program placement; and, denial of medical care.

### 1. Due Process

Plaintiff asserts that his due process rights were violated during his disciplinary conviction which ultimately resulted in his placement in an eighteen month treatment program at Varner Supermax.  Specifically, Plaintiff argues that his rights were violated when Franklin "put in a false report that denied" Plaintiff the right to attend the disciplinary hearing.  (ECF No. 61).  Plaintiff continues that as a result of the disciplinary conviction Washington placed him in the treatment program "which caused a . . . liberty denial," "signed papers for the plaintiff that he was unaware of to admit him for the treatment program," and "denied him the right to appear before the classification committee."  (ECF No. 61).

Defendants argue that summary judgment with respect to this claim is appropriate because Plaintiff's disciplinary conviction and assignment to Varner SuperMax does not amount to an

"atypical and significant hardship" such that he has any due process liberty interest implicated; and, because any challenge to the validity of his disciplinary conviction is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

"In order to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action." *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). When deciding whether an individual was afforded procedural due process a court employs a two-step analysis. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989). First the court must determine whether the individual holds a protected liberty or property interest. *Id.* If the court finds a protected interest, the question becomes whether the state provided sufficient due process prior to depriving that individual of the protected interest. *Id.*

A prisoner can only bring a due process challenge to a disciplinary conviction or proceeding if he is found to have a liberty interest at stake. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Phillips v. Norris,* 320 F.3d 844, 846-47 (8th Cir. 2003). Further, "[t]o prevail on such a claim based on prison housing, an inmate must show that the segregation created an 'atypical and significant hardship on him in relation to the ordinary incidents of prison life' to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002) (alteration omitted) (quoting *Sandin v. Conner*, 515 U.S. 472,484 (1995). An inmate's liberty interests are limited to the nature of confinement and do not extend to procedural rules imposed by the state. *See Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("If [the plaintiff] has a liberty interest, it is an interest in the nature of his confinement, not an interest in the procedures by the which the state believes it can best determine how he should be confined."); *see*

*also Swenson v. Trickey*, 995 F.2d 132, 134 (8th Cir. 1993) (holding that "[p]rocedural guidelines, such as a mandatory hearing, are not enough to create a liberty interest").

Plaintiff argues that Defendants violated his due process rights with respect to his right to appear at a disciplinary hearing which ultimately resulted in his placement on an 18 month involuntary treatment program.  The Court finds, however, that neither Plaintiff's disciplinary conviction or his placement in the treatment program is an atypical and significant hardship which warrants protection by the Due Process Clause.  *See Sandlin v. Conner*, 515 U.S. 472, 487 (1995). *See Jenner v. Nikolas*, 828 F.3d 713, 717 (8th Cir. 2016).

Further, to the extent Plaintiff, through his claim, seeks to challenge the validity of his disciplinary conviction or resulting placement, his claim is barred by *Heck*.

In *Heck*, the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. 486-87.

The *Heck* doctrine applies to inmate disciplinary proceedings and prevents such a challenge in this case.  *Edwards v. Balisok*, 520 U.S. 641 (1997); *Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002).  Thus, *Heck* requires favorable termination of the disciplinary charge "in an authorized state tribunal or a federal habeas court, even if the claim is for damages rather than earlier release." *Sheldon v. Hundley,* 83 F3d. 231, 233 (8th Cir. 1996); *Cincoski v. Richard*, 418 Fed App'x 571, 571-72 (8th Cir. 2011) (Plaintiff's claims regarding his disciplinary convictions, including

15

restoration of good- time credits, declaratory relief, and damages based on those convictions were *Heck*-barred.)

Plaintiff's disciplinary conviction has not been favorably challenged through the appeal process. Summary judgment is appropriate on this claim.

### 2.  Denial of Medical Care

Plaintiff also appears to state a denial of medical care claim against Defendants Franklin and Washington.

The Eighth Amendment's prohibition against cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty*, 684 F.3d 808, 817 (8th Cir. 2012).  The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims including those by arrestees and pretrial detainees. *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012)(noting that while an arrestee's denial of medical care is properly analyzed under the Due Process Clause of the Fourteenth Amendment the analysis parallels that under the Eighth Amendment).  The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

Plaintiff makes bare allegations concerning his denial of medical care claim – arguing that he "put in numerous sick calls" and "was seen untimely."  (ECF No. 142 at 3).  There is no proof that Plaintiff requested medical treatment from the Defendants or that Defendants were responsible in any way for Plaintiff's medical care.  (ECF No. 147-6 at 2).  Viewing these conclusory allegations in the light most favorable to the Plaintiff, the Court finds that there has been no

summary judgment proof established that supports a denial of medical care claim and that the Defendants are entitled to summary judgment in this regard.

### C. Qualified Immunity

Finally, in addition to arguing that the undisputed facts show that Defendants are entitled to summary judgment with respect to Plaintiff's claims for other reasons, Defendants alternatively argue that they are entitled to qualified immunity. The Court, having found that the facts do not make out a constitutional violation, finds that the Defendants are entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### IV. CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment (ECF No. 142) be **denied**.

I also recommend that Defendants' Motion for Summary Judgment (ECF No. 147) be **granted**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 11th day of April 2022.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE